AMERICAN INSURANCE
COMPANY, Plaintiff,

v.

Carl F. FRISCHKORN,
et al., Defendants.

No. CIV.A. 2:00–0618.

United States District Court,
S.D. West Virginia,
Charleston Division.

Nov. 21, 2001.

James R. Watson, Esquire, Steptoe & Johnson, Charleston, WV, for Plaintiff.

Richard F. Neely, Esquire, Neely & Hunter, Charleston, WV, for Defendants.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the parties' cross motions for summary judgment. The Court **GRANTS** Defendants' motion and **DENIES** Plaintiff's motion.

### I. FACTUAL BACKGROUND

Plaintiff American Insurance Company (AIC) is a Nebraska corporation. Defendants Carl F. Frischkorn and his wife Rebecca were at all relevant times West Virginia residents. On August 29, 1991 the Frischkorns signed a General Indemnity Agreement (Agreement) in favor of AIC and others against certain potential losses on performance bonds applied for by Battle Ridge Companies, Inc. (BRCI). Mr. Frischkorn was BRCI's Chief Executive Officer.

On May 28 and September 18, 1992 BRCI entered into contracts with the West Virginia Department of Transportation (WVDOT) to perform road and highway work in Barbour and Upshur counties.

BRCI then entered into subcontracts with Eastern Steel Constructors, Inc. (ESCI) to assist in the construction projects. On October 8, 1992, in accordance with *West Virginia Code* Section 38–2–39,[1] BRCI and AIC signed two Contractor's Bonds to guarantee performance of the Barbour and Upshur county jobs.

Following completion of the jobs, a dispute arose with respect to additional compensation for ESCI in the amount of $1,307,393.87. ESCI and BRCI submitted the matter to arbitration. On August 30, 1994 the arbitrators entered an award requiring BRCI to pay ESCI $239,852.52. On November 29, 1994 ESCI instituted an action in this District against BRCI and AIC. *See Eastern Steel Constructors, Inc. v. Battle Ridge Companies*, No. 2:94–1032 (S.D.W.Va. Nov. 29, 1994)(the ESCI litigation). Count One sought confirmation and further alleged BRCI breached the award by refusing payment. Counts Two and Three alleged AIC engaged in bad faith and unfair claims settlement practices by refusing to pay the award.

During the ESCI litigation, BRCI asserted that an *ex parte* communication between one of its lawyers, Scott Churilla, and one of the arbitrators, Carl L. Fletcher, Jr., prejudiced the arbitration. Churilla described the encounter, asserting Fletcher told him BRCI "could do itself service by 'not continuing to beat a dead horse . . .' during the proceedings and that the panel understood the position of [BRCI]." *Eastern Steel*, No. 2:94–1032, slip op. at 5. Churilla inferred from those comments that the panel required no further evidence from BRCI. He asserted BRCI thus altered its defense and prosecution of the arbitration, not adducing evidence it would otherwise have offered. BRCI asserted it took Fletcher's comments " 'as no less than a distinct warning or advice that the presentation of evidence which unnecessarily prolonged the hearings would be detrimental to" ' BRCI's case. *Id.* at 6–7.

On October 13, 1995 Judge Copenhaver concluded that, in the absence of actual fraud, fraud not alleged by BRCI, the award was enforceable. Judge Copenhaver, *inter alia*, (1) granted ESCI's motion for summary judgment on Count One; (2) denied BRCI's cross motion to set aside the award; and (3) ordered BRCI to pay ESCI $239,852.52 plus prejudgment interest from August 30, 1994 to the date of entry of judgment. The action proceeded against AIC on Counts Two and Three, which had previously been stayed.

---

1. Section 38–2–39 provides pertinently:

   It shall be the duty of . . . legal bodies having authority to contract for the erection, construction, improvement, alteration or repair of any public . . . structure . . . or any . . . other structure used or to be used for public purposes, to require of every person to whom it shall award, and with whom it shall enter into, any contract for the erection, construction, improvement, alteration or repair of any such . . . structure . . . that such contractor shall cause to be executed and delivered to the . . . legal body . . . a good, valid, solvent and sufficient bond, in a penal sum equal at the least to the reasonable cost of the materials, machinery, equipment and labor required for the completion of such contract, and conditioned that in the event such contractor shall fail to pay in full for all such materials, machinery, equipment and labor delivered to him for use in the erection, construction, improvement, alteration or repair of such . . . structure . . . then such bond and the sureties thereon shall be responsible to such materialman, furnisher of machinery or equipment, and furnisher or performer of such labor, or their assigns, for the full payment of the full value thereof.

   *Id.* The statute further requires "All such bonds shall have as surety thereon either some incorporated bonding and/or surety company authorized to carry on business in this State[.]" The Court is uncertain whether AIC is authorized to do business in West Virginia.

Just one month later, on November 25, 1995, AIC paid ESCI the sum of $278,038.36 in satisfaction of the award and subsequent judgment against BRCI.[2] ESCI and AIC later settled the remainder of the case resulting in final dismissal on July 26, 1996. No appeal was taken from Judge Copenhaver's 1995 Memorandum Opinion after judgment was entered.

In February 1997, BRCI instituted an action in the Circuit Court of Upshur County against AIC and Fireman's Fund Insurance Company (FFIC). BRCI alleged the payment to ESCI was made:

> (1) without contractually-required inquiry as to the wishes of the insured; (2) to a party who was *not* a direct third party beneficiary under the bond issued by Defendant on Plaintiff's behalf; and (3) without a good faith investigation of the underlying facts upon which plaintiff demanded further litigation.
>
> . . . .
>
> After [Judge Copenhaver] ruled that he would enforce the arbitrators' award, Plaintiff began preparation of an appeal to the United States Court of Appeals for the Fourth Circuit; thereupon, however, Defendant destroyed Plaintiff's ... claims and rendered the entire proceeding moot by paying not only the arbitration award, but also damages in settlement of a threatened bad faith action against Defendant.

(State Compl. ¶ III, VI).[3] The state Complaint sought no more than $49,900.00.

An involuntary Chapter 7 petition in bankruptcy, later converted to a voluntary case under Chapter 11, was filed against BRCI later in 1997. The Answer in the instant action addresses the state Complaint and the bankruptcy, asserting:

> American Insurance did not answer Battle Ridge's complaint; however, the claim now being made against Defendants would have been a mandatory counterclaim. Both parties agreed to allow all proceedings—i.e., suit and counter suit—to drop because of Battle Ridge's impending bankruptcy. These actions constituted a settlement of all matters between the parties and this suit is now barred by the doctrine of accord and satisfaction.

(Answer ¶ 14). AIC did not file a claim in the Bankruptcy Court for the amount paid

---

2. Although AIC asserts it paid the award due to "the lack of timely payment of the amount" by BRCI, Compl. ¶ 12, Judge Copenhaver apparently did not reduce the award to an immediate, separate judgment order. The formal judgment order was not entered until July 26, *1996*, when the case settled. *Rule* 54(b), *Federal Rules of Civil Procedure* provides pertinently:

> **(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

*Id.*

3. The Agreement contains a provision stating "The Surety shall have the exclusive right to determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors or any one of them on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, if made in good faith, shall be final and binding upon the Indemnitors." (Gen.Indemn.Agmt.¶ 2).

to ESCI.[4] The bankruptcy case has apparently concluded and closed, all available assets having been distributed.

On July 20, 2000 AIC instituted this action against the Frischkorns. It seeks recovery under the Agreement based on AIC's payment to ESCI. The Frischkorns assert a variety of defenses.[5] Foremost, they rely on the following provision from the Agreement:

**19. Consent to Jurisdiction; Service of Process; Choice of Law.**

. . . .

This Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to disputes occurring entirely within such State.

(Gen.Indemn.Agmt.¶ 19). They assert this provision makes the whole of California

law, including its limitations provisions, applicable to this action.

## II. DISCUSSION

There are three separate questions concerning the limitations defense. First, the Court examines the enforceability of the choice-of-law provision in Paragraph 19 of the Agreement. If the provision is deemed enforceable, a question arises concerning its scope. If its scope includes the California periods of limitation, the Court must ascertain the relevant California statute and analyze whether this action is timely.

### A. Enforceability

As noted by our Court of Appeals, "A federal court sitting in diversity must apply the choice-of-law rules from the forum state." *Wells v. Liddy*, 186 F.3d 505, 521 (1999)(citing *Klaxon Co. v. Stentor Elec.*

---

4. Mr. Frischkorn asserts in his affidavit:

> As will more fully appear from the testimony of Art Standish of the law firm of Steptoe & Johnson ... all claims, bonds, premiums, and guaranteed obligations of the Reliance Group (sureties exactly similar to Plaintiff American Insurance Company) were paid in full in the bankruptcy proceedings. Indeed, Judge Edward Friend of the bankruptcy court specifically held a hearing and ruled that sureties were secured creditors and held liens ahead of the banks who had precipitated Battle Ridge's bankruptcy by bringing an involuntary Chapter 7 proceeding. American was listed as a creditor of Battle Ridge and had actual knowledge of Battle Ridge's bankruptcy.

Aff. of Carl F. Frischkorn ¶ 4. At the same time, the Agreement provides "The Surety is not required to exhaust its remedies or rights against the Principal ... before asserting its rights under the Agreement against any other Indemnitor." (Gen.Indemn.Agmt.¶ 14).

5. The Frischkorns moved to dismiss on statute of limitation grounds earlier. The Court denied the motion for several reasons:

> First, an extant, potential factual controversy concerning Defendants' place of resi-

dence may impact the limitations analysis. Second, the parties' briefing does not address several substantial legal issues, including: (1) a line of authority from the circuit courts of appeal represented by *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir.1998); (2) the intent of the provision in question and whether AIC has interpreted it in the past to include both California substantive and procedural law; (3) a West Virginia line of authority, including *Nadler v. Liberty Mut. Fire Ins. Co.*, 188 W.Va. 329, 331, 424 S.E.2d 256, 258 (1992) and *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988), potentially impacting the decision under consideration; and [4] what effect, if any, *West Virginia Code* Sections 33–6–14 and 33–1–10(f) may have on the outcome of this case. Memo. Op. at 1–2. The Court is now satisfied that the clause and background in *Cole* is distinguishable from the instant case. The tolling controversy concerning the Frischkorns' place of residence also appears resolved. The Frischkorns assert, without argument from AIC, they were West Virginia residents as of November 25, 1999, the day they assert the limitations period ran. Finally, following further factual development, the Court is satisfied Sections 33–6–14 and 33–1–10(f) have no application here.

*Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). AIC, relying upon *McKinney v. Fairchild Intern. ., Inc.*, 199 W.Va. 718, 487 S.E.2d 913 (1997) and similar cases, asserts the general West Virginia rule applicable to choice-of-law disputes applies here:

> Traditionally, West Virginia courts apply the lex loci delicti choice-of-law rule; that is, the substantive rights between the parties are determined by the law of the place of injury. However, under the lex loci delicti choice-of-law rule, West Virginia procedure applies to all cases before West Virginia courts. "It is traditional that a forum court always applies its own procedural rules and practices, regardless of the procedure that might be employed if the case were tried at the place where the cause of action arose."
>
> . . . .
>
> The traditional approach classifies the statute of limitation question, except as changed by statute, as procedural, thereby requiring the law of the forum state.

*Id.* at 727, 728, 487 S.E.2d at 922, 923 (quoted authority and citations omitted). As noted in *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988), however, there are exceptions to the rule:

> This survey of our conflict cases lends itself to several conclusions. Our traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occur in the same state. This rule is subject to two qualifications: (1) *that the parties have not made a choice of applicable law in the contract itself;* and (2) the law of the other state does not offend our public policy.

*Id.* at 768, 373 S.E.2d at 351 (emphasis added). The cases cited by AIC do not take account of the exceptions, as no contractual choice-of-law selection was made in those cases. Where the parties, as here, have made a choice on the applicable law, this Court noted the general rule, quoting the seminal case from the Supreme Court of Appeals of West Virginia:

> Under West Virginia law, a "choice of laws" provision in a contract is ·valid unless it falls into one of the exceptions outlined in Syllabus Point 1, *General Electric Company v. Keyser*, 166 W.Va. 456, 275 S.E.2d 289 (1981):
>
>> A choice of law provision in a contract will not be given effect when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or when the application of the law would offend the public policy of this state.

*Riffe v. Magushi*, 859 F.Supp. 220, 222 (S.D.W.Va.1994).

The Court first questions whether it must undertake the substantial relationship/public policy inquiry. In most cases where a choice-of-law selection has occurred, especially in the insurance context, one sees the drafter of the agreement attempting to impose the choice on the other, often surprised, party to the agreement. Here, we have a sophisticated business entity making a choice-of-law selection and then trying to retreat from it when the chosen law suggests a potentially unfavorable outcome. Absent from this case, then, is the drafter attempting to take advantage of a body of law that proves decisive in a dispute with the non-drafter. In an analogous situation, the Court of Appeals found it fair to impose a choice-of-law provision as written. *Cf. Nutter v. New Rents, Inc.*, No. 90–2493, 1991 WL 193490, at *6 (4th Cir. Oct. 1, 1991)(enforcing choice-of-law provision where inserted at the insistence of a co-

venturer (Guidry) of the party seeking to avoid the provision, stating "the choice of law provision was included at Guidry's insistence, and therefore it does not unfairly benefit New Rents. We therefore find the choice of law clause enforceable.")

Assuming the *Riffe* analysis is necessary, however, the Court does not believe AIC has identified a valid public-policy consideration that would trump the parties' choice. Moving to the other consideration in *Riffe*, the Court inquires as to whether the contract bears a substantial relationship with California. The Court believes that relationship is present. First, the general power of attorney, which appointed two attorneys in fact to execute two of the bonds, was signed and acknowledged by AIC's vice-president in Marin County, California. Further, AIC's principal place of business is Novato, California.[6]

Second, AIC is the wholly owned subsidiary of FFIC. Although AIC is the only party-Plaintiff here, the Agreement was made "in favor" not only of AIC, but also FFIC, a California corporation, "or any other present or future subsidiary or affiliate of [FFIC] which may issue Bonds ... as the case may be (any one or all of which, together with the companies described in Section 13, are hereinafter referred to as the 'Surety' ")." (Gen. Indemn. Agmt. at 1); *see also* (Stipul.¶ VII) ("The General Agreement of Indemnity signed by the defendants is an agreement by which the defendants agreed to indemnify certain designated companies for losses arising from present or future bonds issued by said companies to Battle Ridge Companies."). In fact, FFIC's corporate logo appears prominently on the two checks that paid on the bond obligation to ESCI, the payment that lies at the heart

of the present controversy. Further, FFIC was a party to a prior state court dispute between BRCI and AIC. Also, FFIC appears to be listed on the final page of the Agreement as the agent for all sureties, directing inquiries to itself in Novato, California.

Perhaps most compelling, however, is the Frischkorns' commonsense observation to wit:

> [AIC] wanted legal certainty, so it selected a concrete, coherent body of law from a state with substantial commercial law, experience and easily understood rules. Given the national nature of business today, [AIC's] wisdom in selecting the law to apply to an indemnity agreement securing a commercial bond is amply demonstrated by the facts of this case: Here we have a Nebraska corporation, with its actual operating headquarters in California, suing two residents of Charlottesville, Virginia in a District Court of West Virginia on a contract signed on behalf of [AIC] in Louisville Kentucky pursuant to authority granted to the signing agent by an officer in California. Without the choice of law provision, whose law applies?

(Memo. in Supp. at 14).

In sum, the Court believes the agreement bears a substantial relationship to California. There are indeed other states that may have a more substantial relationship, but that is not the test. Further, it would be inequitable, unjust, and contrary to law for FFIC and AIC to maintain such close links, then attempt to forsake their own choice-of-law clause simply because it benefits the opposing parties to the Agreement. Accordingly, the Court

---

6. The parties' stipulation in response to certain inquiries made by the Court was filed November 16 and states "The principal place of business of American Insurance Company is located in Novato, California." Stipul. ¶ III.

concludes the choice-of-law clause is enforceable.

## B. Scope

The next question is the scope of the choice-of-law provision. The provision states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of California *applicable to disputes occurring entirely within such State.*

(Gen.Indemn.Agmt.¶ 19) (emphasis added). While the Court is aware the procedural law of a selected jurisdiction, such as its limitations law, is not typically reached by a choice-of-law clause, the underscored phrase is both unique and unusual. A search of published state and federal case law has not revealed any case where such language has been previously interpreted. Were the sentence to end at the word "California," the Court would presume the drafter intended to incorporate only that State's substantive law and hence not its procedural law on questions such as the applicable limitations period.

■ The underscored language, however, compels the conclusion AIC, FFIC, and the other named sureties sought absolute certainty as to the entire body of law that would cover any disputes with its indemnitors. The language, in effect, seeks to treat disputes under the Agreement, regardless of where they might otherwise be interpreted as geographically arising, as "occurring entirely within" California. As the Frischkorns aptly note, "Certainly when a dispute occurs 'entirely within such State,' both the procedural and substantive law apply." (Memo. in Supp. at 16).

Accordingly, the Court interprets the choice-of-law provision to incorporate the whole of California law.[7]

## C. The Limitations Law of California Applied to this Action

*California Civil Procedure Code* Section 337 provides pertinently:

> *Within four years: 1. An action upon any contract, obligation or liability founded upon an instrument in writing,* except as provided in Section 336a of this code; provided, that the time within which any action for a money judgment for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, may be brought shall not extend beyond three months after the time of sale under such deed of trust or mortgage.

California Civ. Proc.Code § 337 (emphasis added). Section 337 applies to actions on written indemnity agreements. *See, e.g.,* Cal. Jur.3d *Contribution and Indemnity*

---

7. Although not mentioned by AIC, the Court has considered the impact on its analysis of Paragraph 25 of the Agreement. That provision states:

> **25. Effect of Partial Invalidity.** If any part of this Agreement shall be void *under the law of the place governing the construction hereof,* then such part only shall be considered as deleted and the remainder of this Agreement shall endure in full force and effect.

(Gen.Indemn.Agmt.¶ 25) (emphasis added). One could posit the underscored language suggests the choice-of-law provision extends only to construction of the Agreement's terms, and not the whole of the law of California. The better reading, however, giving effect to the principle of construing the Agreement against the drafter, is that paragraph 25 deals only with that small portion of California law addressing issues of construction and interpretation. It does not also delimit the more specific clause in Paragraph 19 dealing with choice of law.

§ 62 (1975)("Actions on written indemnity agreements are governed by the statute governing written obligations."); *Fidelity & Dep. Co. v. Whitson*, 187 Cal.App.2d 751, 10 Cal.Rptr. 6, 11 (1961); *U.S. Credit Bureau v. Claus*, 79 Cal.App.2d 85, 179 P.2d 36, 37 (1947). The same authorities observe the statute commences to run when payment is made by the indemnitee. *See, e.g.,* Cal. Jur.3d § 62 ("On a contract to indemnify for loss, the statute begins to run when the indemnitee sustains the loss, that is, when the indemnitee makes the payment for which indemnity is claimed.").

■ AIC made the payment for which indemnity is claimed on November 25, 1995. It instituted this action over four years and seven months later on July 20, 2000. The action is thus barred by Section 337. Accordingly, the Court **GRANTS** the Frischkorns' motion for summary judgment.

It appears the Frischkorns' counterclaim remains pending. It also does not appear ripe for summary judgment. Accordingly, that portion of the case will proceed to trial. The parties are **ORDERED** to submit a revised, integrated pretrial order no later than 9:00 a.m. on November 26, 2001.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record via facsimile and to post a copy on the Court's website at http://www.wvsd.uscourts.gov.